# First National Bank of Mount Holly Springs *v.* Cumbler, Appellant.

Argued May 8, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, HIRT and KENWORTHEY, JJ.

J. Dress Pannell, for appellant.

James W. Reynolds, with him Mark E. Garber and Wm. H. Earnest, for appellee.

OPINION BY STADTFELD, J., July 2, 1941:

These are appeals from orders of the Court of Common Pleas in Dauphin County discharging rules to show cause why four revived judgments entered by confession upon separate judgment notes should not be opened.

In February and March, 1932, the defendant, M. B. Cumbler, executed and delivered to the plaintiff, First National Bank of Mount Holly Springs, Pennsylvania, four judgment exemption notes, of which three were marked "renewal". By virtue of the powers of attorney contained in each of the several notes, plaintiff confessed judgment on each note on November 15, 1932. Sometime thereafter, on December 31, 1932, the defendant executed and delivered to plaintiff bank four new judgment exemption notes, each of which was marked "renewal" and each of which corresponded respectively in amount to each of the four earlier notes. In the course of this transaction, the bank's cashier returned to defendant four cancelled copies of the old notes. On October 22, 1937, plaintiff bank issued four writs of scire facias to revive and continue the lien of the four judgments entered by confession, returnable on November 22, 1937; and judgment in favor of the plaintiff bank was entered by default upon each of the said writs on January, 1938. Almost two years later, on December 11, 1939, plaintiff bank caused to be issued upon the revived judgments, four writs of execution, pursuant to which the interest of defendant in certain parcels of real estate was levied upon. Shortly thereafter de-

fendant filed his petitions for rules to open the judgments.

The depositions, taken in support of the petitions and answers, concern themselves for the most part with the question whether the four judgment notes of December 31, 1932 were received by the bank as collateral security for the payment of the obligations evidenced by the notes of February and March, 1932, or taken in payment and satisfaction thereof. Presumably, the acceptance of a new note does not constitute an extinguishment or liquidation of the original instrument; and unless there is proof of a special agreement to the contrary, the assumption is that the precedent debt remains in effect, the new obligation being accepted only by way of collateral security or conditional payment: *Aliquippa N. Bk., to use, v. Harvey, Exrx.,* 340 Pa. 223, 16 A. 2d 409. To establish such an agreement defendant testified that the transaction in which the four new notes were executed and delivered by him to the bank, took place on December 31, 1932, during business hours and in the place of business of the bank, and was consummated exclusively between J. Franklin Hartzell, the then cashier of the bank and defendant; and that the papers involved in the transaction included a statement in the handwriting of Hartzell, the cashier, of the transactions with the bank of that day, showing the discount of a note (referred to as the Eugene Kaufman note) deposit of dividend checks, and the itemized deductions of interest paid, a duplicate deposit slip, a statement of interest due on certain obligations, and seven notes. Defendant further testified that the cashier put these seven notes together, cancelled them on the cancelling machine in his presence, and then handed them to him saying, "Here is the old notes"; and believing that these papers did in fact include the four original notes, he put them in his pocket, without looking at them, and he then asked the cashier, "Is this

satisfaction of all notes except the ones I gave you?" and the cashier said, "Yes". According to defendant's testimony, this instance was only one of several during the course of the transaction, in which the cashier assured him that the new notes were payment and satisfaction of the prior obligations. The cashier, Hartzell, testified that he never made a statement that accepting those renewal notes, the other notes would be satisfied because "he accepted these as renewals of the notes as a matter of record to take care of the copies" which he had given the defendant.

Defendant testified that at the time of the execution and delivery of the new notes he did not know that judgments had been entered by confession upon the old obligations in November 15, 1932, but that such notice had first reached him December 3, 1935, upon receipt of a letter from the bank's attorneys notifying him of the bank's intention to issue execution upon the judgments entered on the old notes. This testimony was flatly contradicted by a number of plaintiff's witnesses. B. Frank Snyder, assistant cashier of the bank at the time of the transaction, testified that he had attended a special meeting of the board of directors of the bank on December 2, 1932, at which the defendant was present, and complained of the entering of the judgments on the old notes. The testimony of Snyder was corroborated by Harry J. Dubbs, a director of the bank, who was present at the same meeting. George S. Summers, also a director of the bank, testified that he had had a conversation with the defendant in Harrisburg shortly before the meeting of the board of directors on December 2, 1932, and that defendant complained to him at that time of the entering of the judgments.

Defendant sought, by his testimony, to establish the binding effect upon the bank of the alleged transaction of its cashier in accepting the new notes in payment and satisfaction. In the instant case, as in *Aliquippa*

*N. Bk., to use, v. Harvey, Exrx.,* supra, p. 227: " . . . . . .
it was beyond the authority of the bank officials, who
consummated it. No evidence was presented . . . . . . as
to the powers given them by the by-laws, or whether
and to what extent they were entrusted with the man-
agement of the business of the bank or were held out as
having such authority. As to the powers implied in
their offices, there is general authority, to the effect that
neither the president nor the cashier has the right to
accept anything but money in payment of an obligation
due the bank, nor the power to revoke loans or to dis-
count paper, without being authorized by the board of
directors either expressly or by long-continued acqui-
escence." Defendant did testify, over objection, that
covering a period of eight or ten years he had negotiated
with the cashier, Hartzell, some fifty transactions in-
volving renewal of notes; that he would always ask the
cashier, whether the new notes were in payment and
satisfaction of the old notes; and that the cashier would
say, "Yes". It appears from defendant's testimony that
he was himself a director of the plaintiff bank and from
the testimony given over objection that the cashier had
in the past accepted *his* renewal notes in payment and
satisfaction. No evidence, however, was given that this
was "the manner in which the business of the bank had
been customarily transacted" so as to establish by im-
plication the authority of the cashier, conferred by the
board, to do so. See *Aliquippa N. Bk., to use, v. Harvey,
Exrx.,* supra, and *Bernatovich v. Davis,* 342 Pa. 86,
19 A. 2d 925.

In considering the question of the extinguishment of
the old notes by the acceptance of the renewal notes,
the court below called attention to defendant's conduct
with reference to a fifth note renewed at the same time
with the four in question. That note was dated Febru-
ary 15, 1932, judgment was confessed thereon, and sub-
sequently judgment was taken by default on the scire

facias to revive. On January 24, 1940, that note was assigned by plaintiff bank, at the request of the defendant, to F. C. Stees, defendant's niece, who paid the bank the principal and the interest on the said note. In view of the fact that defendant knew on December 3, 1935, if not before, that judgment had been confessed on that note and thereafter had the note assigned, the court below said, "It is quite obvious when that assignment was made, he did not regard the indebtedness as shown by the judgment as having been extinguished by a note given, as he says on December 31, 1932, but that the former note was existing and in full force and effect. Otherwise a fraud was being perpetrated on his niece."

It has been repeatedly stated both by this court and by the Supreme Court that an application to open a judgment and let the defendant into a defense is an equitable proceeding and one which is peculiarly within the sound discretion of the court below, and the action of the lower court in such a proceeding may be reviewed upon appeal only to determine whether or not there has been an abuse of that discretion: *U. S. Savings and Trust Co. v. Helsel,* 325 Pa. 1, 188 A. 167. A review of the entire record convinces us that the court below did not abuse its discretion. The evidence contained therein does not lead us to the conviction that a jury ought, and probably would, on the basis thereof, find in favor of the defendant.

Attention should be given to the fact that the defendant in the instant case, failed to raise the defense of payment and satisfaction upon the proceedings to revive the judgments confessed on the notes of February and March 1932, although he had full notice of those proceedings. He excuses his failure to do so on the grounds of advice given by his counsel that the defense of payment goes to the merits of the original obligation and could be interposed at any time. The Supreme Court has held, however, in *Bailey v. Bailey et al.,* 338

Pa. 221, 12 A. 2d 577, that since payment of a judgment may be raised as a defense in proceedings to revive, the obtaining of a judgment in scire facias proceedings is res judicata on the issue of payment.

The order of the court below in each appeal is affirmed.